(No. 22545.—)
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ABE PONCHER *et al.* Plaintiffs in Error.

*Opinion filed October 24, 1934.*

JAMES M. BURKE, and GEORGE M. CRANE, for plaintiffs in error.

OTTO KERNER, Attorney General, THOMAS J. COURTNEY, State's Attorney, and J. J. NEIGER, (EDWARD E. WILSON, J. ALBERT WOLL, and HENRY E. SEYFARTH, of counsel,) for the People.

Mr. CHIEF JUSTICE JONES delivered the opinion of the court:

Plaintiffs in error, Abe Poncher and Isidore Poncher, were found guilty in the criminal court of Cook county under an indictment which charged that they bought, received and aided in concealing a stolen automobile, the property of Max Salzman, which had lately before been stolen from him, and that they then and there well knew that said automobile had been stolen.

Abe Poncher was engaged in the business of buying, selling and re-conditioning used automobiles. He also sold automobile parts and accessories, both new and old. The business was carried on under the name of Merit Auto Parts and Service, and was conducted in two adjoining store rooms at the southwest corner of Wabash avenue and Twentieth street, in the city of Chicago. In the rear of the buildings was a yard inclosed by a board fence six feet high and wire netting above it approximately three feet in height, with a double gate opening on Twentieth street. The stock consisted of a large amount of material,

some of which was kept in the store and some in the yard. In the yard there were eight cars and the parts of twenty others. There were also old bodies, springs, wheels, bumpers and tires, both in the yard and within the building. A repair shop and storage business were conducted there. Numerous parts of Dodge and Plymouth cars were about the premises. Isidore Poncher, a brother of Abe, was the manager of the business. In all there were eight employees, including mechanics, helpers and salesmen. The business had been carried on at the same location for twelve years. About 8:45 P. M., December 1, 1933, police officer Francis O'Malley was stationed on the second floor of a building across the street from plaintiffs in error's place of business. He saw the yard gates swing open and a shiny car coming down Twentieth street. He could not see whether it was a Ford or a Plymouth, but it entered the yard through the gates, which were immediately closed. He notified his traveling partner of what he had seen. Two other police officers were notified and all kept watch. About half an hour later the gates opened and a man appeared on the street, looking both east and west. Presently a car came from the yard, stripped of its radiator, hood cover, lights, hub-caps, rear tire cover and bumpers. Officer O'Malley rushed to the street from the building in which he was stationed and started to chase the car, firing shots at it. The car turned into an alley, where it was abandoned by its driver, who ran. He has neither been captured nor identified. It is conceded that he was not one of the plaintiffs in error. The officers shoved the car back into the yard from which it came and stationed a guard at the premises to await the arrival of the owners or employees. No one came during the night. The next morning, a little after 8:00 o'clock, Isidore Poncher arrived. He proceeded to open the store for business. After performing several duties he started to go out of the building, but one of the officers who was standing outside the building told him he

could not do so and accompanied Isidore into the store. Other officers went before a judge of the municipal court and secured a search warrant and five John Doe warrants. They did not return until about 11:00 o'clock in the morning, during all of which time Isidore was under restraint and in custody of a police officer. Upon the return of the police officers from the municipal court one of them read a warrant to Isidore and he was declared by the officer to be under arrest. A search of the premises was instituted and a large number of parts suitable to a Plymouth car were seized.

The testimony shows that Max Salzman was the owner of a Plymouth car which he parked along a street. During his absence the car was stolen and he reported the fact to the police. The car which came out of plaintiffs in error's yard, stripped of many of its parts, was identified as the stolen car by its numbers. Salzman was unable to identify the parts which were taken by the police officers, any more than to say they looked like parts which had been on his automobile at the time of the theft.

Upon the hearing before the municipal court the search warrant was declared to be invalid, and on a trial of plaintiffs in error in the criminal court no reliance was placed on that warrant. It is contended by plaintiffs in error that the arrest of Isidore Poncher was not made under any lawful warrant; that there was no reasonable cause for his arrest without a warrant and the search and seizure were unlawfully made; that the seized articles were improperly introduced against them and that there is not sufficient evidence to sustain their conviction. On the other hand, it is claimed by the prosecution that even if the John Doe warrants and the search warrant were invalid, nevertheless a crime had, in fact, been committed, and the circumstances of which the police officers had knowledge were sufficient to justify the arrest of Isidore and a subsequent search of the entire premises and a seizure of property.

Abe Poncher was not in Chicago at the time of the theft of the automobile but in Indiana on business There is no evidence in the record to connect him with the crime except his ownership of the business, the entry of the stolen automobile into his yard, and the subsequent seizure of the parts suitable to a Plymouth automobile. The proof against Isidore is virtually the same as that against his brother, except that Isidore was shown to be an employee instead of an owner. There is no doubt that the Salzman automobile was stolen and later driven into the yard of the Merit Auto Parts and Service place of business. Neither is there any doubt that the person who drove it into that place of business drove it out and attempted to escape with it. There is no evidence that he intended to leave it on the premises. He left certain parts, but what his purpose was in dismantling the car in the yard may only be surmised. The indictment charges the defendants with receiving and possessing a stolen automobile, and not certain miscellaneous parts of one.

The record shows that a number of employees had keys to the building and that some of the parts which were seized were similar to the missing parts of the Salzman automobile. The strongest proof of identity of any of the parts relates to a tire cover and lock. Articles of the same description were seized by the officers, and a key which was left in the pocket of the automobile was found to operate the lock. However, defendants offered to prove by a locksmith that the manufacturers of the lock made many thousands of similar locks, that there were only about 150 changes among them, and that one key would necessarily unlock several locks. The court refused to admit this testimony on the ground that it was opinion evidence and also that it was not the best evidence. The witness was an expert locksmith who had had experience with hundreds of locks of the same make as the one in

question and he thoroughly demonstrated his qualifications to give the offered testimony. It should have been admitted.

So far as the result in this case is concerned, it is immaterial whether the arrest of Isidore Poncher was made with or without a warrant. Officer Barron testified that when the warrants were issued the officers had no particular person in mind but intended to arrest anyone, whether he be a mechanic, the man in charge or anybody connected with the Poncher people or the organization. It is thus evident that when the warrants were issued the officers did not believe there were sufficient grounds for having a warrant issued against Isidore in his own proper name, otherwise it would have been done. To justify an arrest by an officer without a warrant his ground for belief that the person arrested is guilty of an offense must be such as would influence the conduct of a prudent and cautious man under the circumstances. (*Kindred* v. *Stitt,* 51 Ill. 401; *People* v. *Macklin,* 353 id. 64.) An unlawful search cannot be justified by what is found, and a search which is unlawful in the beginning is not made lawful by the discovery and seizure of contraband articles. *People* v. *Scaramuzzo,* 352 Ill. 248.

The admission in evidence of the seized articles and the testimony relating to them were the most effective proof against plaintiffs in error. It is their contention that the testimony was inadmissible, but the State insists that under the holdings of this court in *North* v. *People,* 139 Ill. 81, and *People* v. *Davies,* 354 id. 168, the search was lawful and the evidence pertaining to it was admissible. In the *North case* the defendant was convicted of the murder of William Hodge, a police officer. The People claimed that Hodge was attempting to arrest North without a warrant for carrying a concealed weapon. It was asserted by North that even if Hodge had the right to arrest without a warrant he had no right to search for a concealed weapon. In passing upon this question the court said: "The guar-

anty of the constitution in regard to search warrants applies only to cases where the purpose of obtaining the warrant is to make a search for goods. It has no application to arrests for particular offenses consisting wholly or in part in having particular property in possession nor to the seizure of dangerous weapons in the possession of the party arrested. In such cases the right of seizure is incidental to the right to arrest." The opinion in that case cannot be construed to mean that if a person is lawfully arrested on a criminal charge which involves his possession of particular property the officers are at liberty to search his home, his place of business or buildings of which he may have the right of occupancy, without first obtaining a search warrant therefor. If it could be so construed, then a person might be arrested upon a public street and after his arrest his home could be entered and searched without a warrant. What the opinion means to hold, and does hold, is, that if a person is arrested he may be searched for weapons and for property in his immediate personal possession which are involved in the crime charged. In the *North case*, as in many others since decided, it was held that the officer had the right, upon a lawful arrest, to search the prisoner, as it is incidental to the right to arrest.

It must be remembered that in the present case the premises of plaintiffs in error were under guard and surveillance from 9:30 o'clock at night until 8:00 o'clock the next morning. No attempt was made to make any arrests during the night. When Isidore Poncher appeared he was permitted to enter the building without interference. The officers were in plain clothes, and it was not until Isidore attempted to step out of the building that an officer revealed himself. From the nature of the case it was impossible for Isidore to have in his personal possession any of the stolen articles. This was well known to the officers. The General Assembly has been diligent in protecting the constitutional rights of our citizens against unreasonable search and

seizure. Division 8 of the Criminal Code (Cahill's Stat. 1933, p. 1081,) makes express provisions for the issuance of search warrants in order that evidence may be obtained of possession of dangerous weapons, counterfeit money, obscene books, lottery tickets, gaming implements, and property stolen, embezzled or fraudulently obtained by false tokens or pretenses, but no search of premises is authorized without a warrant issued in strict compliance with the terms of the statute.

In *People* v. *Davies, supra,* it was claimed by the defendant that his home had been forcibly entered by the police without warrant of law and a search was instituted and a pistol owned by him was seized. On a trial of the case the pistol and testimony concerning the attendant facts were admitted in evidence. The testimony was conflicting. On the part of the defendant it was claimed that the officers, after gaining entry to his home, went to a bed-room and took the pistol from under a pillow. The police officers denied that they obtained it through search and seizure. They testified that they demanded the pistol which defendant had been previously flourishing in a threatening manner and that it was thereupon surrendered to them. In that state of the record the trial court was justified in refusing to suppress the evidence. The language employed in that case was not intended to enlarge the rule or to place any different construction upon the constitutional provision prohibiting unlawful search and seizure than we have heretofore given it.

It follows from what we have said that the exhibits mentioned were unlawfully obtained and were erroneously admitted in evidence.

In order to sustain a conviction for the offense of receiving stolen goods it is not essential that actual physical possession of stolen property shall be traced to the defendants, but potential possession, at least, must be shown. It is enough if the accused has the control over the custodian

or control over the property in the hands of the thief. The evidence in this case, however, does not show that either of the plaintiffs in error had actual possession of or control over the stolen automobile or that it was in the possession of anyone over whom they had dominion. The manifest errors which entered into the trial of this cause require a reversal of the judgment of conviction and the remanding of the cause for another trial.

The judgment is reversed and the cause is remanded to the criminal court of Cook county for a new trial.

*Reversed and remanded.*