THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
HECTOR ORTIZ, SR., Defendant-Appellant.

First District (2nd Division)    No. 79-1635

Opinion filed December 2, 1980.—Rehearing denied December 30, 1980.

Nelson I. Dunitz, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Thomas J. Leanse, and William J. Merritt, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE PERLIN delivered the opinion of the court:

Defendant, Hector Ortiz, Sr., was charged by indictment with the offenses of possession of a controlled substance in violation of section 402(a)(1) of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1977, ch. 56½, par. 1402(a)(1)) and possession with intent to deliver a controlled substance in violation of section 401(a)(1) of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1977, ch. 56½, par. 1401(a)(1)). Prior to trial defendant filed a motion to quash the search warrant and to suppress evidence. The court denied defendant's motion, and following a bench trial defendant was found guilty only of possession of a controlled substance for which he was sentenced to a prison term of six years. On appeal defendant contends that he was not proved guilty of possession of a controlled substance beyond a reasonable doubt and that the trial court erred in denying his motion to quash the search warrant and suppress evidence.

For reasons hereinafter set forth, we affirm the judgment of the circuit court of Cook County.

On June 11, 1978, Investigator Thomas Kinsella executed a complaint for a search warrant averring that on that date he had a conversation with a reliable informant, upon whose information he had acted in the past resulting in a number of arrests and convictions. During this conversation the informant stated that on June 11, 1978, while in the rear bedroom of the first floor apartment at 1632 North Keeler Avenue, he had purchased for $50 a plastic "baggie" containing heroin from "Pop." When the informant asked "Pop" if he had "ounce quantities" of heroin, "Pop" led the informant to the basement and removed from a wooden cabinet a large plastic bag containing a substantial quantity of a brown powder. "Pop"

removed a small portion of the substance from the bag, gave it to the informant as a "free sample," and returned the plastic bag to the wooden cabinet. The informant "used a portion" of both substances and experienced the same reaction he had experienced from his past uses of heroin.

The complaint for the search warrant further alleges that pursuant to his conversation with the informant, Investigator Kinsella established surveillance at the address given by the informant and observed several unknown males approach the porch, converse with "Pop," enter the first floor apartment and leave a short time thereafter. Kinsella's testimony at trial reveals that on three separate occasions within a half-hour period of surveillance a different unidentified male approached the porch, conversed with defendant, entered the first floor apartment and left a short time thereafter.

On June 11, 1978, a search warrant was issued based upon Investigator Kinsella's complaint. This warrant authorized the search of both the first floor apartment and the basement at 1632 North Keeler Avenue and the seizure of heroin and all other narcotic paraphernalia. At approximately 9:30 p.m. Investigator Kinsella, Sergeant Phillip Cline and three other police officers arrived at the above address to execute the search warrant.[1] Upon their arrival they identified themselves, informed defendant that they were authorized by warrant to search both the first floor apartment and the basement, presented defendant with a copy of the search warrant, and advised defendant of his constitutional rights. Although no heroin or narcotic paraphernalia was discovered as a result of the search of the first floor apartment, Kinsella did recover a fully loaded shotgun as well as a quantity of shells from the rear bedroom. Investigator Kinsella proceeded to the basement[2] whereupon he observed a wooden storage cabinet[3] secured by a lock. When Kinsella asked defendant to open the locked storage cabinet, defendant took a key ring from his pocket, removed a key from the key ring and handed it to Kinsella. Kinsella unlocked the storage cabinet and observed a quantity of tools and a table upon which a brown paper bag was situated. Inside the brown paper bag were 19 plastic baggies containing "a brown chunky substance," a package bound with masking tape containing a "brown powder," and a small scale. It was stipulated at trial that chemical analysis of the contents of four of the 19 baggies revealed their contents to be

---

[1] At trial it was stipulated that defendant and his wife are the "beneficial owners" of 1632 North Keeler Avenue.

[2] Investigator Kinsella testified that he proceeded to the basement by exiting the rear door of defendant's apartment onto an enclosed porch and descending "the stairs of the porch to the basement door."

[3] Investigator Kinsella described the dimensions of this cabinet to be "approximately eight feet by eight feet."

heroin. The total weight of the contents of the four baggies was 90.08 grams. The total weight of the contents of all 19 baggies was 427.90 grams.[4]

Investigator Kinsella arrested defendant and then proceeded with the search of the basement and the other "one or two" storage cabinets. During his testimony at the hearing on the motion to quash the search warrant, Investigator Kinsella was unable to recall whether the other cabinets were secured by locks. Pursuant to direct examination at trial, Kinsella indicated that he "believed they [the other cabinets] were open," and responded negatively when asked if he used "a key of any kind" to gain access to these cabinets. During cross-examination Kinsella acknowledged that while testifying at the hearing on the motion to quash, he had been unable to recall whether these cabinets were locked. Upon redirect examination, the following colloquy occurred:

"[Assistant State's Attorney]: Did you use the key that [defendant] gave you to open up any of the other cabinets? * * *

[Investigator Kinsella]: No.

Q: Did you take any key to open up any other cabinet? * * *

A: Not that I can recall.

Q: Do you remember, yes or no?

A: No."

During rebuttal Kinsella denied using "any key to open" the other two cabinets. When Sergeant Cline was questioned as to how many of the storage cabinets were locked, he responded that "[t]he only one I observed with a lock that was locked was the first one. I didn't look at the condition of the other two."

Hector Ortiz, Jr. (hereinafter referred to as Ortiz), defendant's son, resides with his wife in the second floor apartment at 1632 North Keeler. He testified at trial that in March 1976 at defendant's direction he had purchased three locks, all of which could be opened by the same key. Ortiz could remember neither the name nor the location of the hardware store from which he purchased the locks. During cross-examination Ortiz first testified that he had gone to only one hardware store. He later testified during cross-examination that he had gone to several hardware stores. These three locks were then placed on the storage cabinets. Both Ortiz and Julio Colon, Ortiz's brother-in-law who resides in the third floor apartment, testified that all three storage cabinets were locked on June 11, 1978. Defendant also testified that all three storage cabinets had been locked and that the police had requested a key to open all of the cabinets. Ortiz further testified that both he and Colon possessed keys which opened the locks of all three storage cabinets and that a spare key was

---

[1] 427.90 grams is approximately equivalent to 14.9765 ounces.

kept in the kitchen of each apartment. The two remaining locks and Ortiz's key were admitted into evidence.

Although the storage cabinets bore no indication of ownership, Ortiz testified that he and Colon shared the use of the storage cabinet in which the contraband was found, and that defendant did not use that particular storage cabinet. When asked if he owned the heroin, Ortiz responded negatively.

Defendant testified that the storage cabinet in which the heroin was found belonged to Ortiz and Colon, not to him, and that he "had not been in" that particular cabinet for two years. He further testified that he was unaware that there had been any narcotics in his house on June 11, 1978.

## I.

Defendant contends that the evidence adduced at trial is insufficient to establish his guilt of the crime of unlawful possession of a controlled substance. In support of this contention he argues:

"The defense theory of this case is that appellant [defendant] did not have primary possession of this shed, and that others who testified in the record did have primary possession of said shed. That Hector Ortiz, Jr., and Julio Colon had primary joint possession of said shed, and also had a key to the shed. Further Hector, Jr. testified that he had been in the shed recently, and that the defendant, Hector, Sr., had never been in the shed because it was not his."

■■ ■ To support a conviction for unlawful possession of a controlled substance the State must prove not only that defendant had knowledge of the presence of the controlled substance, but also that the controlled substance was in the immediate and exclusive control of the accused. (*People v. Galloway* (1963), 28 Ill. 2d 355, 358, 192 N.E.2d 370; *People v. Embry* (1960), 20 Ill. 2d 331, 334, 169 N.E.2d 767; *People v. Mack* (1957), 12 Ill. 2d 151, 145 N.E.2d 609.) The element of knowledge is hardly ever susceptible of direct proof, but it may be proved by evidence of acts, declarations or conduct of the accused from which the inference may be fairly drawn that he knew of the existence of the controlled substance at the place where it was found. (*Galloway*, at 358; *Embry*, at 334.) Actual physical possession is not required to be proved; possession may be constructive. (*Galloway*, at 358; *Embry*, at 335.) Constructive possession "is that which exists without actual personal present dominion over a chattel, but with an intent and capability to maintain control and dominion." *People v. Fox* (1962), 24 Ill. 2d 581, 585, 182 N.E.2d 692.

In *People v. Nettles* (1961), 23 Ill. 2d 306, 308, 178 N.E.2d 361, our supreme court stated:

"The underlying principle of the *Mack* and *Embry* cases is that

where narcotics are found on premises under defendant's control, it may be inferred that the defendant had both knowledge and control of the narcotics. This inference is based largely upon the nature of the commodity and the manner in which its illegal traffic is conducted. By law the use of narcotics, except for specified medicinal purposes, is rigidly condemned. Because of this illigitimate nature of narcotics, they are sold for exorbitant sums on the black market and are therefore of great value to the person possessing them. Furthermore, since their mere possession may subject such person to severe criminal consequences, the narcotics traffic is conducted with the utmost secrecy and care. Human experience teaches that narcotics are rarely, if ever, found unaccountably in a person's living quarters."

The *Nettles* court concluded therefrom:

"that where narcotics are found on the premises under the control of defendant, this fact, in and of itself, gives rise to an inference of knowledge and possession by him which may be sufficient to sustain a conviction for unlawful possession of narcotics, absent other facts and circumstances which might leave in the mind of the jury, or of the court where a jury is waived, a reasonable doubt as to his guilt. See *People v. Embry*, 20 Ill. 2d 331; *People v. Mack*, 12 Ill. 2d 151." (23 Ill. 2d 306, 308-09.)

Whether there is possession and whether there is knowledge are both questions of fact to be determined by the jury, or by the court where a jury is waived, and as in the case of other factual determinations committed to a jury in criminal proceedings, its findings will not be disturbed on review unless the evidence is so palpably contrary to the verdict, or so unreasonable, improbable or unsatisfactory as to create a reasonable doubt of guilt. *Mack*, at 151.

The record before us contains neither direct proof of knowledge, nor proof of actual physical possession by defendant, and it is his contention that there is no proof which permits, beyond a reasonable doubt, either an inference of knowledge or a finding of constructive possession. We find, however, not a lack of evidence, but merely a conflict in evidence, and that the conclusions and inferences to be drawn therefrom rest completely upon which witnesses the trier of fact chose to believe.

It is undisputed that defendant was the beneficial owner of the building located at 1632 North Keeler Avenue and resided in the first floor apartment at that address. Nobody resided in the basement. It is further undisputed that defendant, when asked by Investigator Kinsella to open the storage cabinet in which the heroin was subsequently found, took a key ring from his pocket, removed a key from the key ring and handed it to Investigator Kinsella. Moreover, the trial court found that the only

storage cabinet which was locked at the time of the search was the storage cabinet in which the heroin was found. Furthermore, we observe that Investigator Kinsella's testimony concerning his surveillance of defendant's activities supports the trial court's finding that defendant was not unaware of the presence of the heroin.

■■ As we previously noted, to support a conviction for unlawful possession of a controlled substance the State must prove not only that defendant had knowledge of the presence of the controlled substance, but also that the controlled substance was in either the actual physical or constructive possession of the accused. Although suspicious behavior in the vicinity of the narcotics alone is not sufficient to show that defendant had constructive possession, it may be ample to show guilty knowledge in defendant if the fact of possession had been proved. *People v. Jackson* (1961), 23 Ill. 2d 360, 364, 178 N.E.2d 320.

■■ Defendant argues that the evidence showed that "Hector Ortiz, Jr., and Julio Colon had primary joint possession" of the storage cabinet in which the contraband was found. This argument assumes the truth of the testimony of defendant, Hector Ortiz, Jr., and Julio Colon. (*Embry*, at 335.) The trial judge, of course, was not bound to believe their testimony that Hector Ortiz, Jr, and Julio Colon jointly possessed the storage cabinet in which the contraband was found. However, even if it be assumed that the evidence showed that Hector Ortiz, Jr., and Julio Colon had possession of the heroin, this does not preclude a finding that defendant was also in possession of the heroin. (*Embry*, at 335.) "To hold otherwise would permit two or more persons to gain immunity from prosecution of a charge of unlawful possession of narcotics by proving joint possession of the drugs." (*Embry*, at 336.) Moreover, mere access by other persons is insufficient to defeat a charge of constructive possession. *Mack*, at 163; *People v. Luetkemeyer* (1979), 74 Ill. App. 3d 708, 713, 393 N.E.2d 117.

In *People v. Inman* (1976), 38 Ill. App. 3d 752, 348 N.E.2d 510, "heroin was discovered in a small, wooden lady's jewelry box underneath the bed in which defendant and his girlfriend had been sleeping." In asserting his lack of guilt defendant Inman pointed to both the presence of his girlfriend and the fact that the heroin was found in a woman's jewelry box. The court rejected both contentions and affirmed Inman's conviction.

Defendant relies heavily upon *People v. Poncher* (1934), 358 Ill. 73, 192 N.E. 732, because, in his words, "the Court found itself in the same dilemna, wherein a number of parties had the right to entry on to the premises of the building in which the contraband had been recovered and there were a number of keys available to others besides the defendant's." Abe Poncher and Isadore Poncher were convicted for the offense of receiving stolen goods. The evidence showed that defendants were

engaged in the business of dealing in used cars, parts and accessories, that a stolen car was delivered to the place of business during the night and driven away without some of its parts. The court reversed the convictions because:

> "Abe Poncher was not in Chicago at the time of the theft of the automobile but in Indiana on business. There is no evidence in the record to connect him with the crime except his ownership of the business, the entry of the stolen automobile into his yard, and the subsequent seizure of the parts suitable to a Plymouth automobile. The proof against Isidore is virtually the same as that against his brother, except that Isidore was shown to be an employee instead of an owner." 358 Ill. 73, 77.

The court makes only passing reference to the keys.[5]

Defendant places great emphasis upon the significance of the other locks and keys introduced into evidence in conjunction with Ortiz's testimony. As previously noted, the trial court found that "there was only one [storage cabinet] locked," and the trial court was not obligated to accept defendant's interpretation of the significance of the other locks and keys. ■■ In the instant case looking to the record in its entirety in light of our function on review of determining only the question of whether there is sufficient credible evidence to prove an accused's guilt beyond a reasonable doubt (*Mack*, at 163), we find no merit to defendant's present contention. The trial court, whose function it was, in the absence of a jury, to determine the credibility of the witnesses and the weight to be afforded their testimony, has rejected the explanations by which defendant has attempted to place himself beyond knowledge and possession of the heroin, and has accepted the prosecution's evidence as true. From our analysis of the record it is our opinion that there is ample evidence, both credible and legally sufficient, from which to fairly infer defendant's knowledge of the heroin he is charged to have possessed. The evidence when tested for veracity rebuts the contention that defendant did not have possession of the storage cabinet in which the heroin was found. We find nothing to justify our interference with the judgment based thereon.

## II.

Defendant also contends that the trial court erred in denying his motion to quash the search warrant and suppress evidence. Defendant's entire argument as it appears in his appellant's brief is set forth below:

> "*Franks v. Delaware*, 98 Sup. Ct. 2674, 1978.
>
> The Franks case deals with a portion of the complaint or affidavit

---

[5] The only reference the court makes to the keys is: "The record shows that a number of employees had keys to the building and that some of the parts which were seized were similar to the missing parts of the Salzman automobile."

for search warrant in which the affiants [sic] statements were not true. In the defendant's case, the affiant is a police officer who received information from a second party. It is the defense's contention that that information which deals with the area of the basement was also untrue. Thus, the defense contended that *Franks v. Delaware* was only one step, and should be broadened, since a lie is a lie, either by first party or second party, it cannot stand to support probable cause for a warrant. Further, that the warrant as drafted was an order directing the police officers to search the entire basement. It did not describe a portion of the basement which was not in the possession or occupancy of the first-floor apartment dweller. Therefore, warrant for the search of the basement was overly broad and lacked specificity."[6]

Supreme Court Rule 341(e)(7) (Ill. Rev. Stat. 1979, ch. 110A, par. 341(e)(7)) provides:

"(7) Argument, which shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on. As to cases involving constitutional questions appealed directly from the circuit court to the Supreme Court, see Rule 302(b). Evidence shall not be copied at length, but reference shall be made to the pages of the record on appeal, excerpts or abstract where evidence may be found. Citation of numerous authorities in support of the same point is not favored. Points not argued are waived and shall not be raised in the reply brief, in oral argument, or on petition for rehearing."

Rule 341 is made applicable to criminal appeals by Supreme Court Rule 612. Ill. Rev. Stat. 1979, ch. 110A, par. 612.

■■ The brief of defendant does not permit us to consider either his claim that the rule of *Franks v. Delaware* (1978), 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674, should be extended beyond the affiant to include an informant, or his contention that the search warrant was overly broad and lacked specificity. No authorities have been cited in support of either proposition, and the argument presented is little more than bare assertions of the issues sought to be raised. Such a brief fails to comply with the standards fixed by the rules of our supreme court and precludes our consideration of the points thus raised. *Deckard v. Joiner* (1970), 44 Ill. 2d 412, 255 N.E.2d 900, *cert. denied* (1970), 400 U.S. 941, 27 L. Ed. 2d 244, 91 S. Ct. 232; *47th & State Currency Exchange, Inc. v. B. Coleman Corp.* (1977), 56 Ill. App. 3d 229, 371 N.E.2d 294.

In *Franks v. Delaware* (1978), 438 U.S. 154, 155-56, 57 L. Ed. 2d 667, 672, 98 S. Ct. 2674, 2676-77, the Supreme Court held:

---

[6] In his reply brief defendant simply "reasserts" this argument without any further explanation or without any response to the arguments contained in the State's brief.

"[W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fouth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit."

Thus the question is not the applicability of *Franks* but whether the rule of *Franks* should be extended beyond the affiant to include the informant. The rule of *Franks* is narrowly drawn and defendant has failed to provide this court with any authority as a basis for expanding the rule.[7] Nor are we aware of any case which has so expanded the scope of the *Franks* rule. The question presented is novel and the resolution of it is bound to be far-reaching. Notwithstanding this, we have been compelled to make an independent search of authorities and have not been aided by a properly prepared brief by defense counsel. The restatement of rule announced by our supreme court in *Kelley v. Kelley* (1925), 317 Ill. 104, 107, 147 N.E. 659, is appropriate here:

"If the questions involved in a case are of sufficient importance to justify asking this court to decide them, they are worthy of the careful consideration of counsel presenting them. If the case is not properly presented and the court is not given the benefit of precedents there is danger of a decision being rendered that will not be in harmony with the weight of authority. It is the duty of attorneys practicing in this court to present to the court the authorities supporting their views and to assist the court in reaching a correct conclusion."

Also appropriate here is our statement in *In re Estate of Kunz* (1972), 7 Ill. App. 3d 760, 763, 288 N.E.2d 520, that:

"Reviewing courts are entitled to have the issues clearly defined, to be cited pertinent authorities and are not a depository in which an appellant is to dump the entire matter of pleadings, court action, argument and research as it were, upon the court."

██ We further note that defendant's contention that the search warrant lacked specificity was never mentioned in defendant's written motion for

---

[7] We note, however, that defendant has suggested that the rule "should be broadened, since a lie is a lie ° ° °."

476

a new trial. The established rule is that failure to specify alleged errors in a motion for a new trial constitutes a waiver of those issues and that such issues cannot then be urged as grounds for reversal on review. (*People v. Irwin* (1965), 32 Ill. 2d 441, 207 N.E.2d 76; *People v. Tate* (1978), 64 Ill. App. 3d 1, 380 N.E.2d 976; *People v. Witherspoon* (1975), 33 Ill. App. 3d 12, 337 N.E.2d 454.) Moreover, we note that in this case there is neither a close balance of the evidence nor any obvious instance of prejudice which would merit departure from the general waiver rule. See *People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856.

For the foregoing reasons we affirm the judgment of the circuit court of Cook County.

Affirmed.

STAMOS and DOWNING, JJ., concur.