THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
LIBORIO CRISANTOS, Defendant-Appellant.
First District (4th Division)   No. 1—88—2418

Opinion filed March 28, 1991.

Michael A. Unger, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and William D. Carroll, Assistant State's Attorneys, of counsel), for the People.

JUSTICE JOHNSON delivered the opinion of the court:

After a jury trial defendant, Liborio Crisantos, was found guilty of possession with intent to deliver a controlled substance. (Ill. Rev. Stat. 1987, ch. 56½, par. 1402.) Defendant was sentenced to a term of six years to be served in the Illinois Department of Corrections.

Defendant appeals, seeking reversal of his conviction or, in the alternative, reversal of his conviction and remand of the cause for a new trial. Defendant raises the following issues for our review: (1) whether the State proved his guilt beyond a reasonable doubt; (2) whether he was denied a fair trial when certain of the State's witnesses allegedly made negative insinuations regarding Hispanic persons; and (3) whether the trial court erred in giving the jury an instruction on both actual and constructive possession of a controlled substance.

We affirm.

At trial, the evidence established that on October 5, 1987, at approximately 2:30 p.m., four members of the Chicago police force's organized crime division, narcotics section, were performing a surveillance of the Latin Lounge. The lounge is located at 2528 Lincoln Avenue in Chicago. The surveillance was conducted from an undercover van which was located 150 feet to 200 feet south of the lounge. Chicago police officers Ricardo Abreu and Frank Goff testified that they observed the owner of the lounge, Vitine Santiago, come out of the lounge on at least two occasions and look along Lincoln Avenue in a northerly direction.

At approximately 2:45 p.m., the officers observed a man, identified as defendant, walking in a southerly direction along Lincoln Avenue. Officer Goff testified that he did not "focus" on defendant until he walked into the lounge. Officer Abreu also testified that he saw defendant walking southbound on Lincoln Avenue. Both Officers Abreu and Goff testified that they observed defendant carrying a box. Shortly after the officers observed defendant enter the lounge, they executed a search warrant.

Officers Abreu, Goff, O'Connor, and Thomas then proceeded directly to the lounge and knocked on the door. The purpose of their presence was first announced in English and then Officer Abreu repeated the same information in Spanish. The officers observed defendant, through a glass door, rapidly walk toward the rear of the lounge.

Santiago, who was standing at the entrance, did not immediately open the door. It was only after the officers started to use force to gain entry into the premises that Santiago opened the door. Once inside the lounge, Officers Abreu and O'Connor walked toward the rear of the lounge. As the officers were walking, they observed defendant coming out of the rest room. Officer Abreu then seized defendant. Officer O'Connor went into the rest room, where he discovered the box that the officers had previously observed being carried by defendant.

Three plastic bags containing 800 grams of cocaine were retrieved from the box.

Defendant was then arrested. In searching the rest of the lounge, the officers discovered a gun and $300 in cash. A triple beam scale, which is commonly used in weighing cocaine, was also found on the premises.

Defendant testified that he was employed by Santiago to do general maintenance work at the lounge. Defendant's regular working hours were from noon until 7 p.m., when the lounge opens for business. He had been employed by Santiago for approximately three years.

According to defendant, on October 5, when the police arrived, he and Santiago were the only two people on the premises. The lounge was closed, and defendant was in the process of "moving" glasses from the back of the lounge to the front of the lounge. Santiago had previously told defendant not to open the door until he instructed him to do so. Defendant also testified that he was not in possession of the cocaine that had been confiscated by the police nor had he ever seen cocaine on the premises.

After hearing all of the evidence, defendant was found guilty and sentenced to six years' imprisonment. It is from this decision that defendant appeals.

The first issue defendant raises is whether the State proved beyond a reasonable doubt that he had either actual or constructive possession of the seized cocaine. Defendant argues that the State's case was based upon the testimony of Officers Abreu and Goff, which was of "dubious trustworthiness" and insufficient to show that he was in actual possession of the cocaine.

Defendant contends that the officers' vantage point in the van would not have allowed them to positively identify him as the person who entered the lounge carrying the box and that Officer Goff did not "focus" on the person carrying the box in question. Moreover, defendant argues, on the day in question, he did not leave the lounge prior to the officers' arrival.

■ Initially, we note that the police officers' testimony regarding defendant's activities on October 5 differs from defendant's version of the events. As the jury found defendant guilty, it is evident that the officers' testimony proved to be more credible. Credibility determinations are exclusively within the province of the jury. (*People v. Collins* (1985), 106 Ill. 2d 237, 261-62.) A court of review will not substitute its judgment for that of the trier of fact where the evidence is conflicting; "[i]t [is] the jury's responsibility to resolve contradictory evi-

dence and factual disputes and weigh the credibility of the witnesses." (*People v. Kubat* (1983), 94 Ill. 2d 437, 468.) We, therefore, defer to the findings of the trier of fact with respect to the weight given to defendant's testimony.

Defendant's claim that the undercover van was parked too far away from the lounge to allow the officers to positively identify him is without merit. The van was equipped with special surveillance equipment to view street activities within radius of the lounge. The fact that Officer Goff testified that he did not "focus" on defendant as he was walking down Lincoln Avenue is not fatal to the State's case, as Officer Abreu did observe defendant walking down the street with the box. Moreover, as the State contends, Officer Goff's observation of defendant's clothing and physical characteristics enabled him to identify defendant as the person he saw carrying the box.

We find defendant's contention that the State had not proved that he was in actual or constructive possession of the cocaine to be without merit. Defendant reasons that he was merely an employee on the premises when the police arrived and that the State did not present evidence that he possessed the contraband or even knew that cocaine was in the lounge.

In order to support a conviction for the unlawful possession of a controlled substance, the State must prove that the defendant had knowledge of the presence of the controlled substance and that the substance was in his immediate and exclusive control. (*People v. Ortiz* (1980), 91 Ill. App. 3d 466, 470.) The elements of possession or knowledge are both questions of fact which must be determined by the jury (*Ortiz*, 91 Ill. App. 3d at 471), and are rarely susceptible to direct proof (*People v. Embry* (1960), 20 Ill. 2d 331, 334). This is because drug trafficking is conducted with the "utmost secrecy and care." *People v. Nettles* (1961), 23 Ill. 2d 306, 308.

In the instant case, we find that the State proved that defendant had actual possession of the drugs as both Officers Abreu and Goff identified defendant as the person carrying the box which contained the 800 grams of cocaine.

Constructive possession may be proved where the accused "knows of the presence of the substance and has the intent and capability to maintain control and possession of it. [Citations.] Thus, defendant must be shown to have exclusive control of the area where the controlled substance was located." *People v. Roundtree* (1985), 135 Ill. App. 3d 1075, 1080.

In the instant case, defendant had exclusive control over the rest room, the area in which the cocaine was found, at the time the

contraband was seized. Defendant was the last person seen in the rest room before the officers discovered the cocaine, and defendant admitted that only he and Santiago were in the lounge when the officers arrived. Under the circumstances of this case, we find that the State had adequately proved defendant's guilt under a theory of constructive possession.

Next defendant contends that he was denied a fair trial by certain statements made by the State's witnesses. Specifically, defendant cites to Officer Abreu's testimony concerning how cocaine is "usually packaged" and how a search warrant is "usually obtained." Defendant argues that these statements, coupled with Officer Goff's testimony that he has heard officers announce their office in Spanish "on several hundred search warrants," constitute reversible error. Defendant reasons that the import of these statements is that all Spanish-speaking persons are drug dealers. He submits that his guilt was not based upon the evidence presented against him but, rather, was due to the fact that he is Hispanic.

However, these objections were not raised during trial or in defendant's motion for a new trial. To preserve a question for review there must be both an objection to the evidence at trial and a written post-trial motion raising the question of the objected to evidence. (See *People v. Enoch* (1988), 122 Ill. 2d 176.) We, therefore, find that for all intents and purposes this issue has been waived.

Even assuming, *arguendo*, that this issue had not been waived, we find no merit to defendant's claim. Defendant is correct in his assertion that insinuations made by the State having no basis in fact constitute "potentially reversible error." (*People v. Connor* (1988), 176 Ill. App. 3d 900, 906.) However, after carefully reviewing the transcript, we find no recorded testimony from Officer Abreu as to how cocaine is "usually packaged" or how a search warrant is "usually obtained." We do not know from which portion of the transcript defendant is quoting. The testimony which defendant refers to was elicited for the purpose of explaining how the narcotics section operates. There was no improper insinuation having no basis in fact made during Officer Abreu's testimony.

Defendant also takes Officer Goff's testimony completely out of context. Officer Goff was giving a narrative as to the events of October 5 when he was asked whether he recalled the words used by Officer O'Connor in executing the search warrant. Officer Goff stated that Officer O'Connor announced their presence and purpose and then told Santiago to open the door. Officer Goff then testified that this same announcement was repeated in Spanish by Officer Abreu "which

[Officer Abreu] always does when dealing with Spanish people. *** I don't speak Spanish, but I understand the phrase because [Officer Abreu has] repeated it on several hundred search warrants."

We find that this testimony was not elicited for the purpose of insinuating that Hispanic persons are drug dealers. This testimony illustrates how Officer Abreu ensures that the announcement is understood by Spanish-speaking persons. While the announcement of authority and purpose may not be necessary to the execution of a search warrant (*People v. Conner* (1979), 78 Ill. 2d 525, 531), it may protect the police officers and result in the avoidance of a confrontation (*People v. Ouellette* (1979), 78 Ill. 2d 511, 520). We cannot, by any stretch of the imagination, interpret Officer Goff's statements as insinuating that Hispanic people are drug dealers. Defendant's contention fails with respect to this issue.

The final issue defendant raises is whether the trial court's instruction to the jury on both actual and constructive possession of a controlled substance was erroneous where the only evidence, allegedly, presented was that of actual possession.

However, we previously held that defendant was proved guilty beyond a reasonable doubt under both actual possession and constructive possession theories. The evidence presented at trial supported both of these theories. Where evidence is presented at trial supporting both an actual possession theory and a constructive possession theory, both theories may be given to the jury. *People v. McCrimmon* (1986), 150 Ill. App. 3d 112, 117.

For the foregoing reasons, the decision of the circuit court is affirmed. As part of our judgment, we grant the State's request that defendant be assessed $50 as costs for defending this appeal pursuant to *People v. Nicholls* (1978), 71 Ill. 2d 166. We deny the State's request that this court also award it an additional $25 as fees pursuant to *People v. Agnew* (1985), 105 Ill. 2d 275, as oral argument before this court was waived by defendant.

Affirmed.

JIGANTI, P.J., and McMORROW, J., concur.