THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
L. C. JAMES SCOTT, Defendant-Appellant.
Third District    No. 3—86—0633

Opinion filed August 28, 1987.

460

Catherine E. Churm, of State Appellate Defender's Office, of Ottawa, for appellant.

John A. Barra, State's Attorney, of Peoria (Howard R. Wertz, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE WOMBACHER delivered the opinion of the court:

After a bench trial, the defendant, L. C. James Scott, was found guilty of the offenses of attempted murder, armed violence and aggravated battery. (Ill. Rev. Stat. 1985, ch. 38, pars. 8—4(a), 33A—2, 12—4(b)(1).) The trial court entered a judgment of conviction on the attempted murder charge only and sentenced the defendant to serve a 20-year term of imprisonment. Defendant appeals. We affirm.

At trial, State witness Robert Schmidt testified that while at the Jewel Tap on May 20, 1986, at about 9 p.m., he was stabbed in the chest. Just before the stabbing, a black man tried to take Schmidt's money from the bar, but Schmidt told the man to leave his money

alone. Schmidt testified that after this statement, he passed out. Schmidt is partially blind and did not see who was behind him. Schmidt denied attacking anyone before the stabbing.

State witnesses Donald Taber and John Thunhorst, who were in the bar at the time of the stabbing, could not identify the man who stabbed Schmidt. Taber, however, was able to recall that the man was wearing a white tank top and jeans. Both witnesses agreed that the man who did the stabbing was the shorter of the two black men who had approached Schmidt.

Officer Fred Ball testified that he stopped the defendant and another man, James Hamilton, pursuant to a radio dispatch which stated that two black males were being sought and that the taller one was wearing a dark jacket and the shorter one was wearing a tank top. Officer Ball then searched the surrounding area for a knife that was mentioned in the attack.

Detective Randy Pollard and Officer Muir interviewed the defendant about the incident at the Peoria police department. Pollard testified that the defendant was upset and belligerent during the interview. It took about 15 minutes for the defendant to calm down enough to give his name. The defendant shouted at them and acted in a threatening manner.

Pollard testified that he first told the defendant that he would not ask him any questions about the case until he determined the defendant's name. Pollard then told the defendant that there had been a stabbing at the Jewel Tap tavern and the man who had been stabbed had been taken to the hospital. Pollard stated to the defendant that both the defendant and Hamilton had been arrested and that he needed information in order to accurately depict what happened before and during the stabbing.

The defendant then told Pollard that he did not like white people and that he would have killed the white man if he had possessed a gun. The defendant stated that if Hamilton had not stopped him, he would have killed the man. After the defendant made these preliminary statements, Pollard repeated that he would not ask the defendant for any information about the stabbing until he determined the defendant's name. At that point, the defendant stated his date of birth and gave other information. Pollard then put his *Miranda* card on the table and read it out loud to the defendant. The defendant stated that he understood it. The defendant picked up the card, read each sentence out loud and explained what each sentence meant in his own words. After he acknowledged that he understood his rights the defendant agreed to talk to Pollard.

Pollard then asked the defendant about the stabbing. According to Pollard, the defendant stated that he and Hamilton entered the bar together. The defendant became angry when a man at the bar refused to buy a drink for him. The defendant was going to walk away but he thought he heard the man say something. As the man stood up from the bar, the defendant stabbed him. After he stabbed Schmidt, another man came at him swinging a crutch. The defendant said that he did not get hit with the crutch but he attempted to strike at that man with his knife as well.

At trial, the defendant testified that he consumed more than a bottle of wine at two other bars before he went into the Jewel Tap. When he extended his arm to get the bartender's attention, a man (Schmidt) said something to him. Schmidt reached for a crutch as the defendant turned. The defendant caught the crutch in his hand and then stabbed Schmidt with his knife in an attempt to protect himself. He said he did not intend to kill anyone and he thought he had stabbed Schmidt in the thigh.

The defendant testified that after he was arrested, while waiting in the cell, the police tried to talk to him three times before the interview with Pollard. Each time he refused to talk because he did not know if the man had died and because he thought he was going to be charged with murder.

The sole issue in this appeal is whether the defendant was denied his sixth amendment right to effective assistance of counsel due to counsel's failure to file a motion to suppress the defendant's confession.

Defendant argues that the initial incriminating statements he made to Officers Pollard and Muir were obtained in violation of *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602. Defendant claims that Officer Pollard made a direct request for information when he told the defendant that he would have to have information from him to accurately depict what happened prior to and during the stabbing. Defendant claims that because defense counsel failed to move to suppress these statements the defendant was denied his sixth amendment right to the effective assistance of counsel. Defendant argues that the detailed statement that he gave after receiving *Miranda* warnings was a product of the earlier unlawfully obtained confession and should also have been suppressed.

In *Strickland v. Washington* (1984), 466 U.S. 668, 690-91, 80 L. Ed. 2d 674, 695-96, 104 S. Ct. 2052, 2066, the Supreme Court established standards to be applied in cases involving allegations of ineffective assistance of counsel. These standards were adopted by our su-

preme court in *People v. Albanese* (1984), 104 Ill. 2d 504, 473 N.E.2d 1246. The *Strickland* court adopted a two-part test which a defendant must satisfy in order to establish a claim for ineffective assistance of counsel, to wit: (1) that counsel's representation fell below an objective standard of reasonableness and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result would have been different. (466 U.S. 668, 80 L. Ed. 2d 677, 104 S. Ct. 2052.) The Supreme Court offered the following guidelines for applying the two-part test: "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. *** If it is easier to dispose of an effectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." 466 U.S. 668, 697, 80 L. Ed. 2d 674, 699, 104 S. Ct. 2052, 2069.

The State argues that the defendant was not prejudiced by defense counsel's failure to file a motion to suppress for two reasons. First, the State argues that the questioning in this case did not constitute a violation of *Miranda*. The State contends that Pollard's questions were simply an attempt to get certain basic identifying data from the defendant. (*People v. Dalton* (1982), 91 Ill. 2d 22, 434 N.E.2d 1127.) Second, the State argues that even assuming, *arguendo*, that defendant's initial statement was obtained in violation of *Miranda*, defendant was not prejudiced by counsel's failure to file a motion to suppress because the defendant made a subsequent voluntary confession after *Miranda* warnings were given. The State, relying on *Oregon v. Elstad* (1985), 470 U.S. 298, 84 L. Ed. 2d 222, 105 S. Ct. 1285, argues that a subsequent administration of the *Miranda* warnings to a suspect who has given a voluntary but unwarned statement should suffice to remove the conditions that precluded the admission of the earlier statement thereby rendering the subsequent statement voluntary and admissible.

■■ The *Miranda* safeguards come into play whenever a person in custody is subject to direct questioning or its functional equivalent. The "functional equivalent" of questioning means any words or actions on the part of the police that the police should know are reasonably likely to elicit an incriminating response from the suspect. (*Rhode Island v. Innis* (1980), 446 U.S. 291, 64 L. Ed. 2d 297, 100 S. Ct. 1682.) Remarks by the police which are designed to gain a response or admission constitute "interrogation" regardless of the form that they take. *People v. Sanders* (1977), 55 Ill. App. 3d 178, 370 N.E.2d 1213.

■ In the present case, before *Miranda* warnings were given, Officer Pollard began questioning the defendant in an interview room at the Peoria police department by asking him for his name. Pollard told the defendant that there had been a stabbing at the Jewel Tap tavern and that the man who had been stabbed had been taken to the hospital. Pollard stated that he needed information in order to accurately depict what happened before and during the stabbing. The defendant then proceeded to make several incriminating remarks. We find that the statements made by Officer Pollard were likely to elicit an incriminating response from the defendant and, therefore, were the "functional equivalent" of questioning. Thus, *Miranda* warnings should have been given and defendant's initial statements in response to Pollard's remarks were suppressible because of the *Miranda* violation. We find, however, that the defendant was not prejudiced by the failure to file a motion to suppress these unwarned statements because defendant's second confession was voluntarily and knowingly made.

In *Oregon v. Elstad* (1985), 470 U.S. 298, 84 L .Ed. 2d 222, 105 S. Ct. 1285, the Supreme Court addressed the question of whether the initial failure by a law enforcement officer to administer *Miranda* warnings, without more, required that any subsequent admissions made after the suspect was informed of, and waived his *Miranda* rights, must be similarly suppressed. The court recognized the "vast difference between the direct consequences flowing from coercion of a confession by physical violence or other deliberate means calculated to break the suspect's will and the uncertain consequences of disclosure of a 'guilty secret' freely given in response to an unwarned but noncoercive question ***." (470 U.S. 298, 312, 84 L. Ed. 2d 222, 234, 105 S. Ct. 1285, 1295.) The *Oregon* court concluded that: "[A]bsent deliberately coercive or improper tactics in obtaining the initial statement, the mere fact that a suspect has made an unwarned admission does not warrant a presumption of compulsion. A subsequent administration of *Miranda* warnings to a suspect who has given a voluntary but unwarned statement ordinarily should suffice to remove the conditions that precluded admission of the earlier statement." (470 U.S. 298, 314, 84 L. Ed. 2d 222, 235, 105 S. Ct. 1285, 1296.) The court noted that in determining the voluntariness of a suspect's statements, the finder of fact should examine the surrounding circumstances and the entire course of police conduct. 470 U.S. 298, 318, 84 L. Ed. 2d 222, 238, 105 S. Ct. 1285, 1298.

Officer Pollard prefaced his initial remarks by telling the defendant that he was not going to ask him any questions about the case

until he determined the defendant's name. Pollard then made two brief statements which we construe to be the functional equivalent of questioning. Pollard told the defendant that there was a stabbing and that he was going to have to have information from him to depict what happened prior to and during the stabbing. After the defendant made the first incriminating remarks, Pollard did not continue to question the defendant about these incriminating statements. Instead, Pollard again told the defendant that he would not ask him for any information until his name was determined. After an examination of all the surrounding circumstances and the entire course of police conduct, we find that the questioning of the defendant was not coercive. Although the initial pre-*Miranda* statements by Pollard were improper, we believe that defendant's response to these remarks was totally voluntary. The police conduct in this case was not such that the defendant was threatened, tricked, or cajoled into making an involuntary confession. In fact, the defendant has not argued that any of the statements that he has made were involuntary.

■ After the defendant made the initial incriminating remarks, Officer Pollard gave the defendant the required *Miranda* warnings and asked the defendant if he understood them. The defendant acknowledged that he did and then proceeded to give a second detailed confession to Pollard. We find that the second incriminating statement made by the defendant was knowingly and voluntarily made, and under *Oregon v. Elstad* sufficed to remove the conditions that precluded admission of the earlier incriminating statement.

We conclude that although the initial unwarned statements of the defendant were obtained in violation of *Miranda*, the subsequent confession of the defendant, after administration of *Miranda* warnings, was knowingly, intelligently, and voluntarily made. Defendant was not prejudiced by the failure of defense counsel to file a motion to suppress the incriminating statements because the second confession was voluntary and admissible. We hold, therefore, that the defendant was not denied effective assistance of counsel because he has failed to show how he was prejudiced by the failure of defense counsel to file a motion to suppress.

Accordingly, the judgment of the circuit court of Peoria County is affirmed.

Affirmed.

STOUDER and SCOTT, JJ., concur.