THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
BRIAN SMALLEY, Defendant-Appellant.

First District (4th Division)   No. 86—0402

Opinion filed December 29, 1988.

Arthur J. O'Donnell, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Kenneth McCurry, Paula Carstensen, and Richard D. Nathaniel, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McMORROW delivered the opinion of the court:

Following a bench trial in the circuit court of Cook County, defendant, Brian Smalley, was convicted of robbery and aggravated battery. He was sentenced to 90 days of periodic imprisonment, placed on probation for three years for the robbery conviction and 2½ years for the aggravated battery conviction, and ordered to pay $600 restitution to the victim. On appeal, defendant contends that his constitutional right to representation by counsel of his own choice was violated when the trial court permitted an attorney not of his choosing

to substitute for his incapacitated, privately retained counsel. We affirm, finding that defendant's acquiescence in the substitution of attorneys constituted an exercise of his right to be represented by counsel of his choice.

BACKGROUND

In view of the nature of defendant's contention we will limit our recitation of the facts to those which are necessary for an understanding of the case and relevant to the issue raised on appeal. Defendant and two codefendants, who are not parties in this appeal, were jointly charged with the robbery and aggravated battery of Patrick Strangaritch in Lincoln Park in Chicago on June 15, 1984. At their joint bench trial, the State presented the testimony of the victim and an eyewitness to the crime, both of whom identified defendant as one of the assailants immediately after his arrest on the night of the offense and again at trial. Several police officers also testified to the events leading to and following the apprehension and arrest of defendant and his codefendants. The substance of defendant's testimony in his own behalf was that although he was in the vicinity of the offense at the time of its occurrence, he was mistakenly identified as one of the assailants.

Defendant's privately retained attorney, Paul Goldman, filed his appearance on July 5, 1984, and appeared at the arraignment on July 10 to enter pleas of not guilty on behalf of defendant and a codefendant, Anthony Lesain. Following the arraignment proceeding, Goldman informed the trial court that he was scheduled to be in the hospital on July 24, the date set for a discovery hearing. Goldman was present at two hearings in September and December 1984, but failed to appear on four other occasions between October 1984 and February 1985.

On March 19, 1985, Goldman appeared in court but when he became physically unable to continue participating in the proceedings, the trial court appointed the public defender to represent defendant and Lesain. On April 17, the assistant public defender who had filed an appearance on their behalf informed the trial court that defendant and Lesain both wished to retain private counsel. The trial court granted a continuance until May 10 to allow them to hire attorneys of their choice. On that date, Goldman again appeared on behalf of defendant and withdrew his appearance as counsel for Lesain, who was thereafter represented by an assistant public defender.

Prior to the commencement of trial on the morning of August 5, 1985, Goldman informed the court that he was extremely ill and needed to lie down and rest for a short time. He assured the court,

however, that his illness was in remission and that following a brief repose he would be ready to try the case. The trial court expressed skepticism about Goldman's ability to continue as defendant's counsel but Goldman insisted that his illness would not prevent him from providing defendant with able representation. Defendant was then brought into the courtroom and asked by the trial court whether he was aware of Goldman's medical condition, *i.e.*, that Goldman suffered from some form of cancer, to which defendant responded in the affirmative. The trial judge noted that Goldman had been ill for some time, informed defendant of Goldman's request to lie down and stated, "I have some questions in my mind as to whether he can fully represent you because of his medical condition." Defendant responded,

> "Well, I feel he is capable of doing it. He *** knows for himself if he is able to or not. *** I can see your point, *** but if he says he can continue with it, ·I don't see nothing wrong with it."

Reiterating his uncertainty as to Goldman's ability to conduct the defense, the trial judge offered defendant the choice of either taking a continuance to secure a different or "back-up" attorney or proceeding with the case that day. Defendant expressly chose to proceed with Goldman as his counsel, and following Goldman's brief rest, the trial commenced. The State presented its case in chief through the testimony of the victim and two police officers. Goldman's participation included cross-examination of the victim and one of the police officers.

The trial was continued until August 15, 1985, on which date defendant testified in his own behalf on direct examination by Goldman. On August 30, Paul Goldman's son, David Goldman, an attorney, was present in court but did not participate in the proceedings, which consisted of the direct testimony and cross-examination of the State's rebuttal witnesses.

On October 25, 1985, David Goldman appeared in court and identified himself as being "from the office of Paul Goldman, on behalf of Brian Smalley." He informed the court that he was appearing in the place of his father, who had been hospitalized since October 2; that the elder Goldman was not expected to be discharged from the hospital for at least another week and that it was questionable whether, even after his release, he would be sufficiently ambulatory to appear in court. He further stated,

> "I have not attended any of the hearings relating to Paul Goldman's client, Mr. Smalley. I would ask for a date so that at the very least either Mr. [Paul] Goldman will appear before the

court to present closing argument on behalf of Mr. Smalley. And if in fact he is not capable of appearing before the court, and with Mr. Smalley's concurrence, I would review the transcript and present closing argument."

The case was continued until November 8, and then to November 18, for closing arguments on the charges against defendant and Lesain.

On November 18, David Goldman appeared on behalf of defendant and made a closing argument in which he reviewed the evidence presented, argued that there was a lack of corroborating evidence and attempted to discredit the testimony of the victim and his identification of defendant. After commenting on the sufficiency of the evidence and the credibility of the victim, the trial court found defendant guilty of robbery and aggravated battery and continued the case to December 19 for post-trial motions and sentencing.

On December 19, after identifying himself and noting that Paul Goldman was the attorney of record, David Goldman advised that court that he had not prepared nor did he intend to file a post-trial motion. The trial court ordered Goldman to prepare a written post-trial motion and continued the case to January 10, 1986, for a hearing thereon and, if the motion were denied, for sentencing.

On that date, David Goldman filed a four-page post-trial motion but waived argument on it. At the sentencing hearing that followed the denial of the motion, David Goldman requested that the court place defendant on probation rather than sentence him to a term of incarceration. The factors argued in mitigation included that defendant was 21 years old, that his criminal history consisted of only two misdemeanors; that he had been gainfully employed for more than a year and was enrolled in college; that he was engaged to be married; and that he was willing to pay restitution to the victim. The court then asked defendant if there was anything he wished to say, to which defendant responded, "No, I agree with everything my lawyer said." The trial court then enumerated the factors to be considered in aggravation and mitigation and structured defendant's sentence to consist of 90 days of periodic imprisonment, three years' probation for the robbery conviction, and 2½ years' probation for the aggravated battery conviction. The court further ordered that defendant pay the victim $600 restitution. This appeal followed.

OPINION

Defendant contends that his constitutional right to representation by counsel of his choice was violated when David Goldman was improperly allowed to appear on his behalf and conclude the trial fol-

lowing the physical incapacitation of Paul Goldman, his privately retained counsel of record. Defendant argues that the trial court erroneously failed to: (1) advise him of his right to request a mistrial or a continuance or to declare a mistrial *sua sponte*; and (2) obtain his knowing and intelligent waiver of representation by chosen counsel of his consent to the substitution of David Goldman as defense counsel.

■ It is fundamental, as defendant asserts, that the constitutional right of a criminal defendant to assistance of counsel includes the right to be represented by counsel of his own choosing. (*People v. Johnson* (1979), 75 Ill. 2d 180, 387 N.E.2d 688.) However, as the State correctly asserts, a defendant may be held to have exercised that right by his acquiescence in the conduct of and representations made by appearing counsel, as well as by express affirmation that the attorney is counsel of his choice. (*People v. Herrera* (1981), 96 Ill. App. 3d 851, 422 N.E.2d 95; *People v. Gazic* (1975), 30 Ill. App. 3d 1063, 336 N.E.2d 73 (abstract of opinion).) Generally, when a private attorney announces in court that he is appearing on the defendant's behalf and he proceeds to conduct himself as the defendant's attorney without contradiction or objection by the defendant, the trial court is entitled to presume that such counsel is of the defendant's own choosing (*Herrera*, 96 Ill. App. 3d 851, 422 N.E.2d 95; *People v. Coleman* (1972), 9 Ill. App. 3d 402, 292 N.E.2d 493); and, in those circumstances, the court is not obligated to inquire of the defendant whether the appearing counsel is his chosen attorney (*Herrera*, 96 Ill. App. 3d 851, 422 N.E.2d 95; *Coleman*, 9 Ill. App. 3d 402, 292 N.E.2d 493). In other words, the defendant's appearance with and treatment of a private attorney as his retained counsel ordinarily is deemed to constitute a ratification of defendant's employment of that attorney and the exercise of his right to counsel of his choice. *Herrera*, 96 Ill. App. 3d 851, 422 N.E.2d 95; *Coleman*, 9 Ill. App. 3d 402, 292 N.E.2d 493; *People v. Colon* (1973), 9 Ill. App. 3d 989, 293 N.E.2d 468.

■ Applying these principles to the facts before us we find that the trial court did not violate nor was defendant otherwise denied his right to representation by counsel of his own choosing. The record established that Paul Goldman had been chronically ill since the inception of adversarial proceedings against defendant and had been absent from several hearings between July 1984 and March 1985. When Mr. Goldman failed to appear at a hearing on April 17, 1985, the trial court allowed defendant a 23-day continuance within which to retain another private attorney or accept representation by appointed counsel. Paul Goldman appeared at the next hearing, on May 10, and resumed his role as defense attorney. His medical condition did not im-

prove, however, and on the morning of July 5, Goldman requested that the trial court briefly delay the commencement of trial to allow him time to rest before proceeding. In a statement of concern for defendant's constitutional right to able and effective representation, the trial judge expressed his willingness to grant another continuance to allow defendant to secure a replacement or "back-up" attorney for the ailing Paul Goldman. Defendant declined the trial court's offer and was represented by Paul Goldman from that day through August 30, when the evidentiary portion of the trial was concluded.

David Goldman first appeared in this case on August 30, 1985, with Paul Goldman. Although David Goldman did not participate in that day's proceedings, which included the direct and cross-examination of the State's rebuttal witnesses, he identified himself on the record as an attorney and the son of Paul Goldman.

On October 25, the date set for closing arguments, David Goldman appeared alone. He announced, for the record and in defendant's presence, that he was "from the office of Paul Goldman" and was appearing "on behalf of [defendant]" in the place of his father, who had been hospitalized for several weeks. He then requested a continuance until such time as Paul Goldman was able to appear, or, in the alternative, that "with [defendant's] concurrence" he (David Goldman) would review the transcript and present closing argument. At no time during the proceeding did defendant repudiate David Goldman's identification of himself as defense counsel, voice any objection to Goldman's request for a continuance or indicate that he did not concur with Goldman's proposal to assume responsibility for the preparation and presentation of closing argument in the event of Paul Goldman's continuing incapacitation. Neither did defendant inform the court nor otherwise behave in a manner suggesting that he did not want David Goldman to present the closing argument on November 18. Likewise, defendant did not indicate dissatisfaction when David Goldman appeared at the post-trial motion hearing one month later and, for the third time, stated that he was appearing in his father's stead on defendant's behalf.

Inasmuch as the trial court admonished defendant at least twice of his right to retain, or have appointed, counsel to replace Paul Goldman, and in view of the conversations the court had with defendant on April 17 and July 5, it was reasonable for the trial court to assume that David Goldman was in attendance with defendant's approval as assistant defense counsel. We also believe that defendant's conduct on October 25, November 18, and December 19, 1985, standing alone constituted acquiescence to or affirmation of the substitution of David

Goldman as his attorney of choice. In addition, we are of the opinion that the events of January 10, 1986, dispel any uncertainties which may exist with regard to defendant's acceptance of David Goldman as his attorney. On that date, as on the three previous court dates, David Goldman again appeared in court "on behalf of [defendant]," and, with no objection from defendant, proceeded to file a written post-trial motion and argue in favor of a lenient sentence. Following David Goldman's discussion of the factors in mitigation, the trial court inquired whether defendant wished to say anything, to which defendant responded, "No, I agree with everything my lawyer said." It is difficult to conceive of a more unambiguous ratification by defendant of David Goldman as his chosen, albeit substitute, counsel.

Finally, it is noteworthy that defendant has not argued how, or even that, he was prejudiced by David Goldman's representation of him. Indeed, he acknowledges that his chosen attorney—Paul Goldman—represented him at the majority of the hearings in this case, including the "crucial dates" at which "the overwhelming bulk of the evidence was admitted," and that David Goldman's participation was limited to presenting the closing argument and involvement in post-trial proceedings. He does not contend that David Goldman's performance was incompetent or ineffective, nor is there support for any such claim. David Goldman prepared a four-page motion for a new trial, which, though ordered by the trial court, was reflective and comprehensive. He also presented an organized and cogent closing statement and made a persuasive argument in favor of probation as an alternative to a determinate sentence of imprisonment. The mere fact that David Goldman did not file a formal appearance as substitute counsel, as defendant points out, does not alter our decision. As this court has previously stated, "this fact has no bearing on the manner in which defendant ratified [his] employment. *** The decisive factor is defendant's conduct with respect to the attorney[ ] who [was] present in court, and not the question of how [that] attorney[ ] came to be associated with the case." *People v. Herrera* (1981), 96 Ill. App. 3d 851, 855, 422 N.E.2d 95, 97.

In summary, the record establishes that the trial court made a conscientious effort to protect defendant's right to representation by counsel of his own choosing by admonishing him of his right to retain new or assistant counsel for his physically impaired attorney and according him ample time and opportunity to do so. In view thereof, we do not believe that the court had any further obligation, or reason, to question whether defendant's subsequent acquiescence to David Goldman's representation of him constituted an exercise of his right to be

represented by counsel of his choice. Furthermore, we find defendant's statement of agreement "with everything *my lawyer* said" (emphasis added) to be conclusive confirmation that David Goldman was authorized by defendant to act as defense counsel following the disability of defendant's originally chosen attorney.

For the reasons stated, the judgment entered on defendant's conviction is affirmed.

Affirmed.

JIGANTI, P.J., and LINN, J., concur.