THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
ISMAEL SALAZAR, Defendant-Appellant.

First District (4th Division) No. 1—89—1202

Opinion filed March 28, 1991.

Raymond A. Figueroa, of Chicago, and Armand L. Andry, of Oak Park, for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Renee Goldfarb, Joseph Brent, and Michael Latz, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LINN delivered the opinion of the court:

Defendant, Ismael Salazar, was convicted of possessing more than 30 grams of a controlled substance with intent to deliver (Ill. Rev. Stat. 1983, ch. 56½, par. 1401(a)(2)) following a jury trial in the circuit court of Cook County. Defendant was sentenced to the penitentiary for a term of 22 years.

Defendant appeals, contending: (1) the State failed to prove beyond a reasonable doubt his guilt and (2) he was denied effective assistance of counsel. Defendant additionally contends he was denied a fair trial because the trial judge (3) denied his request for supplemental *voir dire* questions and (4) erred in several evidentiary rulings; (5) the prosecutor made improper and prejudicial remarks during closing argument; (6) the trial judge refused to give a tendered jury instruction; and (7) refused to answer questions by the jury during its deliberations. Defendant lastly contends (8) his sentence was excessive.

We affirm the judgment of the trial court.

BACKGROUND

The record contains the following pertinent facts. On March 11, 1986, Chicago police officer Thomas Finnelly swore out a search warrant for the Fullerton Gift Shop, located at 3563 West Fullerton Ave-

nue in Chicago, and a person who frequented the premises, known as "Cubano." Officer Finnelly executed the warrant with Chicago police officers Martinez, Sebeck, McCue, Figueroa, Orseshe, and Chicago police sergeant Wagner.

The gift shop was in the first-floor storefront of a two-story building. The shop window had burglar gates across it. Officer Martinez, in civilian dress, knocked on the glass door, which was locked. Defendant came from a back room and approached the door; his hand was in his right jacket pocket. Defendant unlocked the door, and Martinez walked into the shop. Finnelly and the other police officers followed immediately and announced their office. Defendant stood at the far end of the shop's counter, and Benjamin Cabera stood behind the counter. Observing that one of defendant's hands was in his jacket pocket, Finnelly ordered defendant not to move. A "pat-down" search of defendant revealed a semi-automatic handgun in defendant's jacket pocket. Cabera also carried a pistol.

The officers showed defendant and Cabera the search warrant and took them to a furnished room behind the shop. A search of that room yielded another handgun. Searching the main part of the shop, the officers found a wastepaper can below the counter. The can was lined with a clear plastic bag and contained 13 plastic bags filled with cocaine. In the building's basement, the officers found various drug paraphernalia lying on a desktop. They also found a suitcase containing five large plastic bags filled with cocaine. Officers Szoldatits and Feret of the police department's canine unit subsequently joined the search assisted by drug-sniffing dogs. The search yielded a total of 2,869 grams of cocaine, which had a street value of approximately $300,000.

The building had only two entrances that led to the basement stairs. One entrance was locked from the outside with burglar gates and from the inside with a wooden beam. The other entrance was through the shop. Officer Finnelly found a city license certificate and a State revenue department registration certificate that were both issued to defendant for the Fullerton Gift Shop. Preparing to leave the shop, defendant gathered his socks and shoes from the backroom. Officers locked the building with defendant's keys.

On March 27, 1986, defendant and Cabera were jointly charged by information with possessing more than 30 grams of a controlled substance, i.e., cocaine, with intent to deliver. Attorney Michael Green represented defendant from April 1986 to June 1988. Attorney John Cutrone represented defendant during the pretrial proceedings, trial, and sentencing hearing. The trial court provided defendant with an

English-Spanish interpreter, who was present during the pretrial proceedings of record, throughout the trial, and at the sentencing hearing.

Prior to trial, all parties presented various motions *in limine.* Defendant moved to exclude from trial any reference to the street value of the cocaine seized in defendant's arrest. Defendant argued that the cocaine's street value was not relevant to any material issue in the case. The trial judge denied the motion, finding that the probative value of the evidence outweighed its prejudicial impact.

Defendant tendered five proposed *voir dire* questions. The trial judge denied defendant's motion. The judge found that the questions were addressed either by the venirepersons' general oath to answer truthfully questions put to them or by more general questions.

The State moved to exclude any reference to Raphael Rodriguez's Federal conviction of drug possession. The State argued that such evidence was not relevant to any material issue in the case. In response, defendant asserted that Rodriguez actually leased the premises. Defendant argued that evidence of Rodriguez's drug conviction went to the ownership or possession of the seized cocaine. The trial judge denied the motion, finding that Rodriguez's drug conviction was irrelevant. The court reasoned that even if Rodriguez owned or possessed the same cocaine for which defendant was charged, ownership or possession could be joint; the fact of Rodriguez's conviction would not be relevant to the issue of defendant's guilt or innocence.

Cabera then moved to exclude from trial any reference to the handguns found in the search. The trial court denied the motion, finding that the evidence was relevant to the issue of defendant's guilt.

Cabera requested a bench trial. As a result, defendant and Cabera were jointly tried, but defendant was tried before a jury while Cabera was tried before the bench. At trial, Officers Finnelly and Martinez testified for the State. In addition to the above-stated pertinent facts, Officer Finnelly testified that he was familiar with the neighborhood surrounding the Fullerton Gift Shop. He further testified that it was not unusual for shopkeepers to equip their businesses with burglar gates and to possess guns.

Michael Zuccaro, the landlord of the building, testified for the State as follows. Zuccaro leased the building's units. Immediately prior to November 1985, Zuccaro leased the premises to Cabera. During Cabera's tenancy, the other tenants in the building had access to the building's basement to do their laundry. Zuccaro leased the premises to defendant in November 1985; defendant signed the lease. Subsequent to the start of defendant's tenancy, the other tenants in the

building were excluded from the basement, which had no windows. The State rested. Officer Szoldatits was defendant's sole witness.

The jury convicted defendant as charged. At the sentencing hearing, the trial judge denied defendant's post-trial motion. At the close of the hearing, the trial judge sentenced defendant to a prison term of 22 years. Defendant appeals.

OPINION

I

■ Defendant claims that the evidence failed to establish beyond a reasonable doubt his guilt. Where a criminal conviction is challenged based on insufficient evidence, a reviewing court, considering all of the evidence in the light most favorable to the prosecution, must determine whether any rational fact finder could have found beyond a reasonable doubt the essential elements of the crime. A criminal conviction will not be set aside unless the evidence is so improbable or unsatisfactory as to create a reasonable doubt of the defendant's guilt. *People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267, 276-77.

■ To support a conviction for unlawful possession of a controlled substance with intent to deliver, the State must establish that the defendant had knowledge of the presence of narcotics, that the narcotics were in the immediate control or possession of the defendant, and that the amount of narcotics exceeded any amount that might be viewed as possessed for merely personal use. (*People v. Pintos* (1988), 172 Ill. App. 3d 1096, 1101, 527 N.E.2d 312, 315.) Whether these elements exist is a question of fact to be determined by the trier of fact. *People v. Ortiz* (1980), 91 Ill. App. 3d 466, 471, 414 N.E.2d 1072, 1076.

■ Defendant contends the State failed to prove that he knew that the cocaine was on the premises. The element of knowledge is, of course, rarely susceptible of direct proof. (*Ortiz*, 91 Ill. App. 3d at 470, 414 N.E.2d at 1075.) However, a fact finder may infer that a defendant had both knowledge and possession of narcotics if the drugs are found on premises under defendant's control. If the defendant controlled the premises, an inference of knowledge and possession arises, which may sustain a conviction. (*Ortiz*, 91 Ill. App. 3d at 471, 414 N.E.2d at 1075-76, quoting *People v. Nettles* (1961), 23 Ill. 2d 306, 308-09, 178 N.E.2d 361, 363.) Mere access by others is insufficient to defeat the inference of knowledge and possession. *Ortiz*, 91 Ill. App. 3d at 472, 414 N.E.2d at 1077 (and cases cited therein).

■■ The record in the case at bar contains abundant proof that defendant controlled the premises on which the cocaine was found. The record contains evidence that defendant leased the premises, which consisted of the shop and the basement. His name appeared on the lease and also on two business licenses. Some of the cocaine was found in the shop, in an accessible location behind the counter. The remainder was found in the basement, where police also found various drug paraphernalia lying on a desktop. Defendant denied access to the basement to the other tenants in the building. The only available entrance to the basement was through the shop.

■■ Defendant attempts to identify inconsistencies in the evidence. Based on those inconsistencies, he argues that his conviction should be reversed. However, those are questions of fact, which the fact finder found against defendant. After carefully reviewing the entire record, we cannot say that the evidence is so improbable or unsatisfactory as to create a reasonable doubt of defendant's guilt.

## II

■■ ■ Defendant next claims that he was denied effective assistance of counsel due to inadequate representation. To establish a claim of ineffective assistance of counsel based on inadequate representation, a defendant must prove that: (1) counsel's representation fell below an objective standard of reasonableness; and (2) a reasonable probability exists that, but for counsel's unprofessional errors, the result would have been different. (*People v. Scott* (1987), 159 Ill. App. 3d 459, 462-63, 512 N.E.2d 836, 838, citing *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052.) Additionally, a reviewing court need not determine whether a defense counsel's performance was unreasonable before examining the prejudice that defendant allegedly suffered. A court should dispose of a claim of ineffective assistance of counsel based on insufficient prejudice if it is easier to do so. *Scott*, 159 Ill. App. 3d at 463, 512 N.E.2d at 838.

Defendant alleges that he could not communicate with his attorney because he was not conversant in English and Cutrone was not conversant in Spanish. Although defendant acknowledges that the trial court appointed an interpreter for him, he nonetheless alleges that a "language barrier" handicapped his ability to converse with counsel.

■■ However, the record does not show, nor does defendant even allege, that the interpreter was deficient in any manner. Rather, the record shows that an interpreter was present throughout all of the proceedings, sat next to defendant throughout the trial, and enabled

defendant to understand the proceedings, the court, and counsel. (See *People v. Tomas* (1985), 136 Ill. App. 3d 1054, 1057, 484 N.E.2d 341, 343.) We find no prejudice here.

■ Defendant also alleges that Attorney Cutrone, who represented him during pretrial proceedings and throughout the litigation, was not his counsel of choice. Defendant asserts that a relative hired Cutrone without his knowledge, and that he believed that Michael Green, his attorney prior to Cutrone, would represent him at trial. Defendant further alleges that the "language barrier" exacerbated the misunderstanding. However, a "defendant's appearance with and treatment of a private attorney as his retained counsel ordinarily is deemed to constitute a ratification of defendant's employment of that attorney and the exercise of his right to counsel of his choice." (*People v. Smalley* (1988), 178 Ill. App. 3d 314, 318, 533 N.E.2d 428, 431.) If defendant, assisted by an interpreter, did not want Cutrone to represent him, he could have notified the trial court.

■ Defendant also alludes to the fact that he did not testify at trial. He makes the bald allegation that his "decision not to testify in the case was not likely a decision based on considered judgment with the assistance of counsel." First, this assertion is pure conjecture; defendant does not assert that he even wished to testify at trial. Second, defendant raised this issue only after he was convicted. As a result, we conclude that defendant's failure to testify was a matter of trial strategy with which he agreed. See *People v. Berry* (1988), 172 Ill. App. 3d 256, 261, 526 N.E.2d 502, 506; *People v. Knox* (1978), 58 Ill. App. 3d 761, 767-68, 374 N.E.2d 957, 962.

■ Defendant lastly asserts that Cutrone's representation was inadequate because Cutrone did not request a pretrial psychological examination to determine defendant's fitness to stand trial. Again, defendant does not claim that he was actually mentally unfit to stand trial; rather, he merely alludes to the possibility. As a result, he was not prejudiced by defense counsel's failure to request a physical examination. We hold that defendant received effective assistance of counsel.

### III

Defendant next claims that he did not receive a fair trial because the trial judge denied his request for supplemental *voir dire* questions. Defendant tendered the following proposed questions:

"1. \*\*\* Will you be able to answer my questions honestly and completely without regard to what you may think the answers should be?

2. *** Without intending to embarrass you in any way, will you tell us whether you, any relative or a close friend has had a personal or legal problem with drugs or drug dependency?

3. While no one is in favor of drugs, that does not mean that this case is your opportunity to 'Say No to drugs.' It is important that you decide the case, not based on your feelings about drugs, but strictly upon the evidence in the case ***. Will you be able to do that?

4. In relation to any prospective juror who indicates that the juror has a relative or close friend of a law enforcement officer, we would request that the Court ask the juror about the frequency with which the juror sees that individual, whether they ever discuss that person's work and whether that relationship would make them tend to believe the testimony of a law enforcement officer more than the testimony of any other witness, simply because the witness is a law enforcement officer.

5. Have you ever expressed or do you hold the view that the courts are generally too lenient with criminals or persons charged with crimes?"

The trial judge denied defendant's motion. The judge found that the first question was addressed by the venire's general oath to answer truthfully the questions put to them. The judge ruled that he would ask the venirepersons the essence of the second and fourth questions, but in a general manner. The judge rejected the third and fifth questions.

 This claim is yet another naked allegation that is unsupported by the record. Defendant asserts that the trial judge's refusal to ask his tendered *voir dire* questions resulted in a "failure to guarantee" defendant an impartial jury. However, defendant does not argue that the jury finally selected was actually unfair or biased in any manner. Therefore, we will not infer prejudicial error under such circumstances. See *People v. Phillips* (1981), 99 Ill. App. 3d 362, 369, 425 N.E.2d 1040, 1046 (and cases cited therein).

IV

Defendant next assigns error to three of the trial judge's rulings on the parties' *in limine* motions. Defendant contends the trial judge erred in: (A) excluding evidence of Rodriguez's Federal conviction of drug possession, (B) allowing evidence of the cocaine's street value, and (C) allowing evidence that defendant and Cabera possessed handguns.

■■ A trial court must be certain that the grant of a motion *in limine* will not unduly restrict the opposing party's case, or deprive a criminal defendant of a viable defense. However, such motions are encouraged in criminal cases to exclude collateral or extraneous matters. A reviewing court will reverse a trial court's grant or denial of a motion *in limine* only if the court manifestly exceeded its discretion. *People v. Downey* (1987), 162 Ill. App. 3d 322, 334, 515 N.E.2d 362, 369.

■■ We further note that the general test for the admissibility of evidence is its relevance. Evidence is relevant where the fact or circumstance offered tends to prove or disprove a disputed fact or to render the matter at issue more or less probable. *People v. Jones* (1982), 108 Ill. App. 3d 880, 884-85, 439 N.E.2d 1011, 1015-16.

### A

■■ Defendant contends the trial judge erred in excluding evidence of Rodriguez's Federal conviction of drug possession. He argues that the evidence is relevant to the ownership or possession of the seized cocaine. We agree with the trial judge that the fact of Rodriguez's drug conviction would not render the issue of defendant's guilt more or less probable. The judge correctly reasoned that even if Rodriguez owned or possessed the same cocaine for which defendant was charged, the possession could be joint. (See *Ortiz*, 91 Ill. App. 3d at 472, 414 N.E.2d at 1077, citing *People v. Embry* (1960), 20 Ill. 2d 331, 335-36, 169 N.E.2d 767, 769.) Therefore, the fact of Rodriguez's conviction was not relevant to the issue of defendant's guilt.

### B

Defendant contends the trial judge erred in allowing evidence of the cocaine's street value of approximately $300,000. Defendant argues that evidence of the narcotics' street value is not an element of the offense of possession of a controlled substance with intent to deliver. Defendant further speculates that evidence of the narcotics' high street value might have biased the jury.

■■ However, it is now settled that evidence of the street value of seized narcotics is relevant to the issue of intent. In other words, "possession of a drug in excess of the amount normally intended for personal use is circumstantial evidence from which a trier of fact may infer that the defendant possessed the substance with the intent to deliver." (*People v. Sadaka* (1988), 174 Ill. App. 3d 260, 265, 528 N.E.2d 283, 288.) Additionally, absent any substantial showing of prej-

udice, the relevance of the street value of narcotics clearly outweighs its prejudice. 174 Ill. App. 3d at 265, 528 N.E.2d at 288.

## C

■■ Defendant contends the trial judge erred in allowing evidence that defendant and Cabera possessed handguns. In his one-paragraph statement, defendant has failed to cite any authority or refer to the record. (See 134 Ill. 2d R. 341(e)(7).) Because defendant has failed to adequately present this issue to us for review, we deem the issue waived. *People v. Clay* (1988), 167 Ill. App. 3d 628, 637, 521 N.E.2d 243, 250; *Ortiz*, 91 Ill. App. 3d at 474-75, 414 N.E.2d at 1078-79.

## V

Defendant next claims that he did not receive a fair trial due to the prosecutor's improper and prejudicial remarks during closing argument. During the State's rebuttal argument, the following colloquy occurred:

"[Prosecutor]: Ladies and gentlemen, the evidence that you have seen and the evidence that you have heard from the witness stand is overwhelming. The evidence of the defendant's guilt *** is overwhelming. Well, what do you do, what do you say when the evidence is overwhelming? What you do is, you talk about something else. You talk about side issues. You talk about something that has nothing to do with the issues in this case. And that is what the defense attorney has done.

[Objection overruled.]

[Prosecutor]: Just because you say it doesn't make it so. And the defense attorney is trying to pull the wool over your eyes because you are not familiar with big cocaine dealers.

[Objection overruled.]"

■■■ ■ Courts have consistently condemned comments disparaging the integrity of defense counsel and implying that the defense presented was fabricated at the direction of counsel. (*People v. Starks* (1983), 116 Ill. App. 3d 384, 394, 451 N.E.2d 1298, 1305 (and cases cited therein).) However, not every attack on defense counsel entitles defendant to a new trial. Such remarks constitute reversible error only when the remarks substantially prejudiced the defendant. In other words, were it not for the remarks, the verdict would have been different. (*People v. Howard* (1984), 121 Ill. App. 3d 938, 952-53, 460 N.E.2d 432, 442.) After carefully reviewing the record in the case at

bar, we hold that the jury would not have reached a different verdict had the attack on defense counsel not been made.

## VI

Defendant next claims that he did not receive a fair trial because the trial judge refused to instruct the jury with a tendered instruction. During the instruction conference, defendant tendered Illinois Pattern Jury Instructions, Criminal, No. 4.15 (2d ed. 1981) (IPI Criminal 2d), which provides as follows:

"Possession is a voluntary act if the offender knowingly procured or received the thing possessed, or was aware of his control of the thing for a sufficient time to have been able to terminate his possession."

The trial judge denied the instruction over defense counsel's objection. Defendant argues that the jury, lacking this instruction, did not receive sufficient guidance.

"In considering the adequacy of instructions, a reviewing court must take all of the instructions as a unit to ascertain whether they fully and fairly cover the law." (*People v. Mitchell* (1979), 78 Ill. App. 3d 458, 462, 397 N.E.2d 156, 160.) In the case at bar, the trial judge instructed the jury on the requirement of knowledge and the other elements of the offense. The instructions defined the crime charged in the language of the statute. (See IPI Criminal 2d Nos. 17.10, 17.11.) This was entirely proper. See *People v. Monroe* (1975), 32 Ill. App. 3d 482, 487-88, 335 N.E.2d 783, 787-88.

## VII

Defendant claims he did not receive a fair trial because the trial judge refused to answer questions by the jury during its deliberations. The jury sent a note to the trial judge stating: "Testimony found in basement about packages in corner." The trial judge responded with a note stating: "Members of the jury, you have heard all the evidence and received each, please continue your deliberations, Judge John Morrissey." The jury subsequently sent a second note stating: "Does the charge possession of a controlled substance with the intent to deliver, just the way the law is written," and "or is possession of a controlled substance separate with the intent to deliver?" The trial judge sent a message to the jury that the applicable law was contained in the jury instructions and that the jury should continue to deliberate.

We conclude that the trial court properly declined to answer the jury's questions. The first message from the jury was not even a question. To address the jury's apparent concern, the trial judge

would undoubtedly have needed to have a colloquy with the jury and, perhaps, even to further explain the facts. The second message was addressed apparently to the elements of the offense. However, the jury was clearly instructed as to those elements in the language of the statute. (See *People v. Reid* (1990), 136 Ill. 2d 27, 39-40, 554 N.E.2d 174, 179-80.) We cannot say that the trial court exceeded its discretion.

## VIII

Defendant lastly claims that his 22-year prison sentence was excessive. Defendant points to his age and lack of prior convictions.

■■ ■ Supreme Court Rule 615(b)(4) authorizes this court to reduce a criminal sentence. (134 Ill. 2d R. 615(b)(4).) However, a sentencing decision is a matter of judicial discretion and, so long as the sentence is within the statutory limits, we hesitate to exercise our power to reduce it absent a finding that the trial court exceeded its discretion. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 153, 368 N.E.2d 882, 883.) In other words, a "rebuttable presumption arises that the sentence imposed was proper and is only overcome by an affirmative showing that the sentence imposed varies greatly from the purposes and spirit of the law or is manifestly violative of constitutional guidelines." *People v. Jenkins* (1984), 128 Ill. App. 3d 853, 857, 471 N.E.2d 647, 650, citing *People v. Gallardo* (1983), 112 Ill. App. 3d 764, 775-76, 445 N.E.2d 1213, 1222.

■■ After reviewing the record in the instant case, we cannot say that the trial court exceeded its discretion. The 22-year sentence was within the statutory range. The record shows that the trial judge considered many different factors before imposing sentence. Further, where the record shows that the trial court considered all the relevant factors that the law requires prior to imposing sentence, a substantial term of imprisonment for possession of a large quantity of cocaine with intent to deliver is not an abuse of discretion. (*People v. Bergman* (1984), 121 Ill. App. 3d 100, 110-11, 458 N.E.2d 1370, 1378-79.) We hold that defendant's prison sentence of 22 years was well within the discretion of the trial court.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

JOHNSON and McMORROW, JJ., concur.