THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MICHAEL GREGORY, Defendant-Appellant.

First District (4th Division) No. 1—91—4032

Opinion filed May 26, 1994.

644

Rita A. Fry, Public Defender, of Chicago (R.H.R. Silvertrust, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Annette Collins, and Matthew McQuaid, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE CAHILL delivered the opinion of the court:

A jury found Michael Gregory guilty of first degree murder, attempted first degree murder, and aggravated battery in the death of Keith Leslie. The trial court sentenced defendant to 24 years in prison. Defendant appeals, and we affirm.

Defendant makes three claims of error: (1) the trial court told the jury that defendant made no constitutional challenge to the statement he made to the police when, in fact, he had; (2) the trial court prohibited defendant from cross-examining the State's eyewitness about his use of aliases; and (3) the State inflamed the jury in opening argument when it mentioned that one victim was handicapped.

Ken Leslie testified that on the night of January 9, 1990, he, his brother Keith, and a friend, Tomango Greshan, were watching television and drinking beer at the Leslie home. They received a phone call from Brian Dorenzo, a boyfriend of Naynay Leslie, the sister of Ken and Keith. He asked to speak to Naynay, but she was not home. Dorenzo called back several minutes later and asked for Naynay again. She still was not home. The phone continued to ring through the evening, but the caller would hang up.

The Leslie brothers and Greshan left home about 9:30 p.m. to buy more alcohol. They decided to stop by Freda Dorenzo's house on the way to speak to her about her brother, Brian. Ken knocked on the door at Freda's house and was let in by a friend of Freda's. The friend summoned Freda. Ken asked Freda why her brother kept

phoning the Leslie house. Freda replied that she could not tell her brother Brian what to do.

Keith Leslie then entered the house and asked Freda where her boyfriend Tony was, because Tony owed Keith $5. Freda said she did not know. Ken then heard "some racket" behind him, turned, and saw his brother holding a stick. Ken took the stick from Keith. Freda then said that Keith had broken her television set. Ken told Freda that if the television set was broken, Keith would pay for it. The men then left.

They then went to the house of Freda's cousin to look for Brian, but he was not there. They decided to go home. As they walked down 79th Street at Laflin, past Freda's house, Ken heard Freda call his name from the entrance to her building. He crossed the street and approached Freda, but she entered the building and began to climb some stairs. Ken went to the door, waved his hand, and told Freda to forget it. He then turned and walked back towards the other side of the street.

At this point, Ken heard a gunshot and felt a sting in his back. He turned and saw defendant, Michael Gregory, standing across the street in front of Freda's building pointing a gun at him. Defendant continued to fire the gun, and Ken fell down on his back. He saw defendant shooting across the street at Keith and Greshan. Ken motioned to Keith and Greshan to run. Confused, they first ran towards defendant and Ken, but then turned and began running away. Defendant continued to shoot in their direction as they ran away. Ken then saw defendant run into Freda's building. Ken also testified that at no time in the course of the evening did he have a gun or tell anyone that he had a gun.

The following morning Keith Leslie's body was found in the vicinity of 79th and Laflin. According to the coroner, Keith Leslie had one entry gunshot wound on the left side of the lower rib cage and one on the back side of the left flank. The cause of death was multiple gunshot wounds. Ken Leslie had a gunshot wound to his abdomen and underwent surgery on his abdomen, back, and spine.

Jaton Nance testified for defendant. She stated that she had dated Ken Leslie in the past and was dating him on January 25, 1989. She testified that on that day Ken Leslie came to her house, pointed a gun at her and threatened to kill her if she broke up with him.

Freda Dorenzo also testified for defendant. She said she was at home when Ken, Keith, and Greshan came to the door looking for her brother Brian. She told them she did not know where Brian was. She and Ken then started to argue. Ken entered her apartment and pointed a black handgun at her head. Keith entered and smashed

her television set with a baseball bat. Ken told her that if they did not find Brian, they would return. The three men then left.

Freda then went across the street to a public phone and called her father and the police. She walked back across the street and saw the three men returning. She testified that Ken Leslie was running towards her holding out a gun. She went inside with the intention of going upstairs to another apartment to find her brother. As she went up the stairs she encountered defendant and another man who lived in the upstairs apartment. She was crying and told them that Ken Leslie was coming with a gun. She then continued to the second-floor apartment. As she arrived at the second floor, she heard gunshots. She did not see any of the shooting. She then ran downstairs and across the street. She used the public phone to call the police and an ambulance.

Defendant testified that he was at a friend's apartment drinking. He left the apartment to buy more beer, and on his way down the stairs he encountered Freda Dorenzo. Freda was hysterical and said something about a man with a gun. Defendant continued down the stairs and out the door. As he reached the curb, he noticed three men standing across the street. One of the men crossed the street and approached him. The man said: "Who the fuck are you?" Defendant replied, "Who the fuck are you?" The man then said, "I'll show you who the fuck I am," and reached for the handle of what appeared to be a gun in his waistband. Defendant, in fear of his life, pulled out a handgun and shot twice. He did not know if he hit the man twice, but the man fell to the pavement.

Defendant then saw one of the other men moving towards him from across the street. This second man carried a blunt object. Defendant was frightened and fired several times in the man's direction to deter him from attacking. Defendant then left the area. He did not report to the police that he had shot a man because he did not believe there were witnesses and was afraid that no one would believe his version of the events.

The jury returned verdicts of guilty for first degree murder (Ill. Rev. Stat. 1991, ch. 38, par. 9—1), attempted murder (Ill. Rev. Stat. 1991, ch. 38, pars. 8—4, 9—1), and aggravated battery (Ill. Rev. Stat. 1991, ch. 38, par. 12—4). The judge sentenced defendant to 24 years in prison. Defendant appealed.

■ Defendant first argues that the court erred by remarking in front of the jury that the defendant made no constitutional challenge to the statement he gave to the police. While defense counsel was cross-examining Detective John Duffy, he asked the officer if he had given defendant a waiver of rights form. The prosecutor objected. The judge, in ruling, said:

"Well, the jury may generally consider all the circumstances under which a statement was made. There has not been a motion to suppress, has not been any constitutional challenges to this alleged statement by the defendant, so I think the jury should know that there has not been any constitutional challenge to the statement by the defendant, but generally the jury may consider all of the circumstances under which a statement was allegedly made."

The judge's statement was incorrect. The defendant had filed a detailed motion to suppress on various grounds which was denied before trial. Defendant argues that the comment was reversible error because the judge invaded the province of the jury by intimating that defendant's statement was valid.

We will not reverse a conviction because of improper comments by the trial judge unless the comments substantially prejudiced defendant's case. (*People v. Cukojevic* (1981), 103 Ill. App. 3d 711, 431 N.E.2d 1154.) Here, although the judge's comment was in error, it did not substantially prejudice defendant. First, defendant's statement to the police and his testimony at trial did not vary significantly. Defendant alleged in his statement that he acted in self-defense and so testified at trial.

Second, the judge permitted defendant to extensively cross-examine the State's witnesses about the circumstances under which the statement was given. The jury was therefore not prevented from drawing their own conclusions about defendant's statement.

Third, the court gave two IPI instructions (Nos. 1.01 and 3.06-3.07) (Illinois Pattern Jury Instructions Criminal Nos. 1.01, 3.06-3.07 (2d ed. 1981)) which informed the jury that the judge did not intend to offer an opinion on the facts or the verdict and that the jury must decide what weight to give defendant's statement. These instructions substantially limited any prejudice in the judge's comments. *People v. Pittman* (1973), 55 Ill. 2d 39, 302 N.E.2d 7.

We conclude that the judge's comment was harmless beyond a reasonable doubt.

■ Defendant also argues that the trial court denied his sixth amendment right to confront witnesses by granting a motion *in limine* which prohibited him from examining Ken Leslie about his use of aliases in a prior arrest. A reviewing court will reverse the grant or denial of a motion *in limine* only if the court manifestly exceeds its discretion. (*People v. Salazar* (1991), 211 Ill. App. 3d 899, 570 N.E.2d 802.) The scope of cross-examination is also within the sound discretion of the trial court. (*People v. Cooper* (1993), 244 Ill. App. 3d 366, 614 N.E.2d 220.) Generally, evidence is only admissible if it is

shown to be relevant to a disputed fact or issue in the case. *Salazar*, 211 Ill. App. 3d at 910.

Defendant made no effort to explain the relevance of Ken Leslie's earlier use of aliases to an issue in this case. No evidence suggested that Ken Leslie used an alias in the course of the investigation of this case.

If we assume that Leslie's earlier use of aliases was relevant to his credibility, the exclusion is harmless. Confrontation errors, although constitutional violations, do not automatically warrant reversal but may be harmless beyond a reasonable doubt. (*People v. McCoy* (1992), 238 Ill. App. 3d 240, 606 N.E.2d 245.) Defendant extensively cross-examined Leslie on all relevant issues, including any motive, interest, or bias he might have in the outcome. Based on all the evidence before us, we find that the exclusion of the alias evidence did not prejudice defendant or influence the outcome of the case.

■ Defendant argues finally that the State's references to Keith Leslie's handicap were irrelevant and prejudicial. The State explained in opening statement to the jury that victim Keith Leslie was born with chronic renal failure, suffered from a bone disease, and had bone deformities in his ankles and wrists. The defense objected. The court denied the objection, instructing the State to establish the relevance of the remarks at trial. Defendant contends that the State never established the relevance of Keith's handicaps and that the reference inflamed the passions of the jury.

A prosecutor may not say anything to inflame passions or arouse prejudice against the defendant without throwing light on the issues in the case. (*People v. Smith* (1990), 141 Ill. 2d 40, 565 N.E.2d 900.) Improper comments in opening statement are reversible error, however, only where they are attributable to deliberate misconduct and result in substantial prejudice to the defendant. *People v. Wills* (1987), 153 Ill. App. 3d 328, 505 N.E.2d 754.

Here, the prosecutor's comments were relevant to an issue in the case: defendant's claim of self-defense. Defendant argued that he shot at Keith Leslie because Keith was moving towards him from across the street with a blunt object. Defendant characterized Keith's movement in the following manner: "I seen a guy crossing the street running at me at a fast pace ***," and "He was basically walking, not running, but trotting." The prosecutor's comments were relevant to Keith's physical ability to act in the manner described by the defendant.

In light of this and the overwhelming evidence against defen-

dant, the isolated references to the victim's handicaps did not substantially prejudice defendant's case.

Affirmed.

JOHNSON and HOFFMAN, JJ., concur.